AETNA LIFE AND CASUALTY Co., demandante y recurrida, *v.* AMERICANA OF PUERTO RICO, INC. y CONSOLIDATED MUTUAL INSURANCE Co., demandadas y recurrentes.

*Número:* R-74-216        *Resuelto:* 17 de abril de 1975

*Geigel, Silva, Soler Favale & Arroyo* y *Ernesto F. Rodríguez Suris,* abogados de las recurrentes; *Rieckehoff, Calderón, Rosa Silva & Vargas* y *David Rivé Rivera,* abogados de la recurrida.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

Tomamos los hechos según fueron estipulados por las partes.

En 7 de septiembre de 1968 el Dr. Jerome Lorber y su esposa se hospedaron en el Hotel Americana, de San Juan. En esa ocasión la Sra. Lorber depositó prendas de su propiedad, por valor de más de $4,000, en la caja de seguridad del hotel. De allí fueron hurtadas. En 28 de diciembre del mismo año dichos señores volvieron a hospedarse en el Hotel Americana y esta vez la Sra. Lorber depositó prendas suyas por valor de más de $5,000, en la caja del hotel y también le fueron hurtadas.

Los Lorber tenían un seguro que cubría ese riesgo, expedido por Aetna Life & Casualty Co. Esta indemnizó a los Lorber hasta el límite de $7,348.00 por dichas pérdidas y se subrogó en sus derechos para recobrar del hotel y de su aseguradora, Consolidated Mutual Insurance Company, el importe de lo pagado por ella.

Aetna demandó a la corporación dueña del hotel, Americana de Puerto Rico, Inc., y a Consolidated Mutual en el Tri-

bunal Superior de San Juan. Solicitó sentencia por la suma pagada por ella a los Lorber, más costas y honorarios. Las demandadas alegaron que su responsabilidad máxima es de $500.00 en virtud de la Sec. 2 de la Ley de Hosteleros, 10 L.P.R.A. sec. 712.

El Tribunal Superior, Sala de San Juan, declaró con lugar la demanda y condenó a Consolidated Mutual a pagarle a Aetna $7,348.00 más costas y honorarios. Hasta la suma de $500.00 la sentencia es solidaria entre las codemandadas Consolidated Mutual y Americana de P.R., Inc. A solicitud de las codemandadas acordamos revisar.

Para resolver es necesario, desde luego, que examinemos el contrato de seguro y las leyes que gobiernan específicamente la situación aquí presentada, esto es, la Ley de Hosteleros y el Código de Seguros. La Sec. 2 de la Ley de Hosteleros, 10 L.P.R.A. sec. 712, lee como sigue:

"Cuando un hostelero haya provisto una caja de seguridad en la oficina del hotel que administra o cualquier otro lugar conveniente para guardar objetos de valor (según se definen en la sec. 711 de este título) que pertenezcan a los huéspedes, y haya colocado en un sitio conspicuo de la habitación o habitaciones ocupadas por dichos huéspedes, en las salas públicas, y en la oficina del hotel, un aviso indicando que hay disponible tal sitio para guardar objetos de valor, el hostelero no será responsable por la pérdida de tal propiedad, bien por robo u otra causa, a menos que dicho huésped haya depositado la misma en el sitio y en la forma indicada en dicho aviso. Sin embargo, si el huésped entregara dichos objetos al hostelero, en la forma indicada en dicho aviso, el hostelero estará obligado a atender con debido cuidado la protección de los mismos; y será responsable por cualquier pérdida o daño ocurrido por su negligencia al no ejercer el debido cuidado en la protección de tales objetos; Disponiéndose, sin embargo, que en tal caso *la responsabilidad del hostelero no excederá de la suma de quinientos (500) dólares, a menos que el huésped que le hubiere entregado los objetos haya declarado por escrito una valoración mayor al hostelero.*" (Bastardillas nuestras.)

■ ·Como en este caso los huéspedes no ·declararon por escrito, al momento de depositar sus valores en la caja del hotel, que aquéllos excedían de $500, la responsabilidad máxima del hotel es de $500 en cada ·hurto, a tenor con la antes transcrita disposición de la Ley ·de Hosteleros. No hay duda de que el hotel debía pagar dichas sumas, pero es el caso que el hotel tenía ese riesgo cubierto con su aseguradora Consolidated Mutual. ¿Cuánto debe pagar esta última?

Para contestar la pregunta anterior es necesario que veamos el contrato de seguros celebrado entre el hotel y Consolidated Mutual. Según dicho contrato Consolidated se obligó a pagar por su asegurado—el hotel—"aquellas sumas que el asegurado *viniese obligado en ley a pagar* . . . . (¹) (Bastardillas nuestras.) ¿Cuál es, en este caso, la suma que el asegurado vino obligado en ley a pagar? Como hemos visto, $500 en cada hurto, a tenor con la citada Sec. 2 de la Ley de Hosteleros. El exceso de esa suma, hasta cubrir el valor real de las prendas hurtadas, el hotel no vino obligado en ley a pagarlo.

El contrato de seguros, en otra cláusula, también limita la responsabilidad del asegurador, al disponer, entre las condiciones de la póliza, que el límite de la responsabilidad de la aseguradora es el límite de la responsabilidad de la firma asegurada. Volvemos a toparnos aquí con el límite de $500 en cada hurto que establece nuestra Ley de Hosteleros.

Debido a otro contrato de seguros—el celebrado entre los Lorber y Aetna—ésta vino obligada a pagar a los Lorber hasta el límite de $7,348.00. (²)

Si los Lorber hubiesen declarado por escrito al hotel el valor de las prendas al ·depositarlas en la caja de éste, entonces, en virtud del contrato de seguros celebrado entre el hotel y ·Consolidated, la responsabilidad de Consolidated hubiese su-

---

(¹) "To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay . . . ."

(²) *Asumimos que esto es así en cuanto a Aetna, pues de lo contrario Aetna no hubiese pagado esa suma a los Lorber.*

bido a un máximo de $1,000 en cada hurto. Esto es así porque el referido contrato dispone que si el asegurado—el hotel— asume, en esos casos, una responsabilidad mayor de $500 el seguro la cubre sólo hasta $1,000.

■ Como hemos visto, este caso no gira sobre la cuestión de si una exención estatutaria de responsabilidad concedida al hotel beneficia o no a su asegurador. Aquí no se trata de eso, ni eso ocurre. Normalmente, esa clase de defensas, denominadas personales o privativas—y que son en realidad privilegios —no están disponibles para los aseguradores. Ese privilegio que la ley, como cuestión de política pública, concede a un hotel o a otra empresa, no lo "hereda" su asegurador ya que la política pública no se propuso establecer un privilegio o una ventaja económica a favor de los aseguradores. *García* v. *Northern Assurance Co.*, 92 D.P.R. 245, 254 (1965); *Cuchi Coll* v. *Gobierno de la Capital*, 93 D.P.R. 734, 737 (1966); *Ortiz* v. *Gobierno Municipal de Ponce*, 94 D.P.R. 472, 476 (1967); *cf. Ruiz Millán* v. *Maryland Cas. Co.*, 101 D.P.R. 249 (1973); *Torres* v. *Interstate Fire and Casualty Co.*, 275 F.Supp. 784, 787 (1967); *Alcoa Steamship Co.* v. *Charles Ferran and Co.*, 251 F.Supp. 823, 831 (1966); *In Re Independent Towing Co.*, 242 F.Supp. 950, 954 (1965). Esto lo señala correctamente la ilustrada Sala sentenciadora.

La conclusión a que es necesario llegar en este caso se debe (1) a que los Lorber no hicieron la declaración escrita que menciona la Sec. 2 de la Ley de Hosteleros, de modo que opera la limitación de responsabilidad que dicha ley concede a los hoteles en Puerto Rico y (2) a que el contrato de seguros entre el hotel y Consolidated Mutual a su vez dispone unos límites de cubierta. Por eso Aetna no puede recibir de Consolidated Mutual más de $500 en cada hurto: $1,000.00.

■ ¿Quiere decir lo anterior que en virtud de la limitación de responsabilidad que la ley concede a los hoteles y de los contratos de éstos con sus aseguradores, los huéspedes están

desprovistos de toda protección, aun en casos de negligencia de los hoteles? No lo creemos así porque si el huésped declara por escrito el valor de los objetos que deposita en la caja del hotel, entonces tiene pleno vigor la citada Sec. 2 de la Ley de Hosteleros, la cual, cuando el huésped hace la declaración escrita, fija la responsabilidad total en el hotel. Véase al efecto la segunda oración de la citada Sec. 2. En otras palabras, si el hotel no tiene seguro o si tiene uno que no es suficiente (como en el caso de autos) entonces el hotel es responsable, de probarse la negligencia.

En vista de lo anterior, *se enmendará la sentencia recurrida en el sentido de fijar en $1,000.00 la suma que Consolidated Mutual y el Hotel Americana deben pagar a Aetna ($500.00 en cada uno de los dos casos de hurto aquí concernidos) y de eliminar las partidas de costas y honorarios de abogado y así modificada se confirmará.*